**CRULL v. WICKARD, Secretary of Agriculture.**

**No. 9290.**

Circuit Court of Appeals, Sixth Circuit.

July 2, 1943.

See, also, 40 F.Supp. 606.

Leo J. Sandmann, of Louisville, Ky., for appellant.

John S. L. Yost, of Washington, D. C., (W. Carroll Hunter and Jesse E. Baskette, Jr., both of Washington, D. C., and Eli H. Brown, III, of Louisville, Ky, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

The appellant, a milk distributor, attacks a judgment of the District Court ordering him to comply with the provisions of Federal Order No. 46 regulating the handling of milk in the Louisville area. Pursuant to § 8c (15)(B) of the Agricultural Marketing Agreement Act of 1937, Title 7 U.S.C. § 608c(15), 7 U.S.C.A. § 608c(15) (B), the appellant instituted proceedings in the District Court to review a ruling made by the Secretary of Agriculture to the effect that the appellant was subject to the provisions of Federal Order No. 46. The appellee filed a counterclaim praying that the appellant be directed, in compliance with the order, to pay $1,953.38 to the Milk Administrator for the purposes of the Producers-Settlement Fund, and $83.21 as pro rata share of the administration of the order. The District Court issued a mandatory injunction commanding the appellant to comply fully with all the provisions of the order, and a permanent injunction restraining the appellant from handling milk in violation of any of the terms and provisions of the order as amended. A supplemental judgment was later entered, ordering appellant to pay $3,724.07 to the Producers-Settlement Fund, and $124.69 to the administrative fund.

Under the Agricultural Marketing Agreement Act of 1937, Title 7 U.S.C. § 601 et seq., 7 U.S.C.A. § 601 et seq., the Secretary is authorized to issue marketing orders regulating the handling of such milk as is in the current of interstate commerce or directly affects such commerce. Title 7 U.S.C. § 608c(5)(A) and (B), 7 U.S.C.A. § 608c(5)(A, B), provide in substance that orders relating to milk may establish minimum prices uniform as to all handlers, computed upon the value of the milk of all handlers classified and priced according to its use. Adjustments in payments among handlers are provided for such as will result in the payment by each handler of a sum equal to the value of the milk purchased by him at the prices established in the order. The statute provides for the rendition of marketing services to producers to be paid for by deductions to be made by the handlers in making payments to producers, and for the establishment of an agency to administer the order and for the payment by each handler of his pro rata share of the expense of such administration. After finding that all milk produced for sale within the area is in the current of interstate commerce or directly affects such commerce, the order in question fixes the value of milk in the area according to its use by each handler, establishes a uniform price for milk to be paid by all handlers to all producers, and establishes a Producers-Settlement Fund in the hands of the market administrator for the equalization of the cost of milk to all handlers according to the use made by the individual handler of the milk, by payments to such fund or withdrawal therefrom by handlers. The order also provides for the rendition of marketing service to producers with the cost to be defrayed by the payment by each handler to the market administrator of four cents per hundredweight of milk to be deducted by the handler in making payment at the uniform price to producers. Handlers are required to make periodic reports to the market administrator.

The appellant is an individual doing business under the firm name of the Parkland Dairy in Louisville. He buys raw milk from producers, all of whom are located in Kentucky, pasteurizes, bottles and distributes it, wholesale and retail, wholly within the city of Louisville. While ordinarily handling only intrastate milk, he purchases milk in emergencies from one or more of the principal handlers, about twenty per cent of whose milk comes from Indiana, and four or five per cent of whose milk is resold in Indiana. He regularly sells milk at wholesale to stores which handle milk from various other dairies, part of which moves in interstate commerce. Appellant manufactures no milk products, selling only milk, buttermilk, and cream, and being forbidden by a municipal zoning ordinance to expand his plant so as to provide for the manufacture of milk products. While appellant has made the required monthly reports to the market administrator and paid the uniform price to his producers set by the order, after deducting four cents a hundredweight

for marketing service payments to the market administrator, he has not made the required payments to the market administrator for the Producers-Settlement Fund, nor for the administrative expense fund.

Appellant testified, and it was not denied, that for the months of April, May, and June, 1940, part of the period in question, he was billed by the administrator for $638.01; that the total net profit for the three months (which included no allowance for rent, nor for salary for himself, his wife or his daughter, who conduct the business, nor for $50.47 paid the bottle exchange) was only $863.45. The payment of the amount demanded, all of which was to go into the Producers-Settlement Fund, would practically wipe out his profits, and the payment of similar amounts in the future might eventually wipe out his business. Two other small milk handlers testified without contradiction that they had been unable to make sufficient profits to meet the payments required. One of them borrowed in order to make a payment of $440 to the fund. The other was compelled to take substantial amounts out of a reserve fund to pay to the administrator the amounts required. The only factual answer to this evidence made at the hearing was that the appellant is inefficient. Appellant, however, has conducted his business as a going concern for thirteen years.

Appellant contends that the order is invalid because it has enlarged upon the Act and was promulgated in violation of Title 7 U.S.C. § 608c(5), 7 U.S.C.A. § 608c (5), which provides that in the case of milk and its products orders "shall contain one or more of the following terms and conditions, and (except as provided in subsection (7) no others." A similar limitation is provided in subsection (7)(D), namely, that provisions of the order must not be "inconsistent with, the terms and conditions specified in subsections (5), (6), and (7) * * *." Appellant contends that the order does not fall within the terms and conditions specified under § 608c(5). But we think that the order, which is printed in the margin,[1] falls within and is authorized by § 608c(5) (A), (B), and (C), which provide for a market-wide equalization pool, and specifically authorize the Producers-Settlement Fund by declaring that,

[1] "Sec. 946.8. Payment for milk. (a) Time and method of payment. On or before the 15th day after the end of each delivery period, each handler shall pay to each producer, for milk received during the delivery period, an amount of money representing not less than the total value of such producer's milk at the uniform price per hundredweight, computed pursuant to Sec. 946.7 (b), subject to the butterfat differential set forth in paragraph (f) of this section. Any handler may make payments to producers in addition to the minimum payments required by this paragraph: Provided, That such additional payments are made to all producers supplying such handler with milk of the same quality and grade.

"(b) Producer-settlement fund. The market administrator shall establish and maintain a separate fund known as the 'producer-settlement fund' into which he shall deposit all payments made by handlers pursuant to paragraphs (c) and (e) of this section, and out of which he shall make all payments to handlers pursuant to paragraphs (d) and (e) of this section.

"(c) Payments to the producer-settlement fund. On or before the 15th day after the end of each delivery period, each handler shall pay to the market administrator the amount by which the total value of the milk received by him from producers during the delivery period is greater than the amount of the minimum payments required to be made by such handler pursuant to paragraph (a) of this section.

"(d) Payments out of the producer-settlement fund. On or before the 20th day after the end of each delivery period, the market administrator shall pay to each handler for payment to producers the amount, if any, by which the total value of the milk received from producers by such handler is less than the amount of the minimum payments required to be made by such handler pursuant to paragraph (a) of this section. If at such time the balance in the producer-settlement fund is insufficient to make all payments pursuant to this paragraph, the market administrator shall reduce uniformly such payments and shall complete such payments as soon as the necessary funds are available. No handler who, on the 20th day after the end of each delivery period, has not received the balance of payment due him from the market administrator shall be deemed to be in violation of paragraph (a) of this section if he reduces his payments to producers by not more than the amount of the reduction in payment from the producer-settlement fund."

"In order to accomplish the purposes set forth in paragraphs (A) and (B) of this subsection (5)," the order shall provide "a method for making adjustments in payments, as among handlers (including producers who are also handlers), to the end that the total sums paid by each handler shall equal the value of the milk purchased by him at the prices fixed in accordance with paragraph (A) hereof."

■ The equalization fund has been held constitutional in United States v. Rock Royal Co-operative, Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446. The legality of the fund was specifically ruled on, 307 U.S. at pages 555, 571, 59 S.Ct. at pages 1004, 1011, 1012, 83 L.Ed. 1446. In United States v. Wrightwood Dairy Co., 315 U.S. 110, 117, 62 S.Ct. 523, 86 L.Ed. 726, the Producers-Settlement Fund was described and the order containing provision for such fund was applied to a company apparently doing entirely intrastate business, 315 U.S. at page 115, 62 S.Ct. at page 524, 86 L.Ed. 726. We deem it unnecessary, therefore, to describe the operation of the fund or to discuss its constitutionality. Under the above decisions the payment into the equalization fund required of the appellant does not deprive him of property without due process of law.

■ The order was established in accordance with law. The marketing agreement was promulgated after evidence introduced at a public hearing in which all parties interested were given an opportunity to be heard in pursuance of § 608b and § 608c (3), Title 7 U.S.C., 7 U.S.C.A. §§ 608b, 608c (3). Handlers of more than fifty per cent of the value of milk covered by the order refused to sign the marketing agreement. In accordance with § 608c(9), the order was then made effective upon the determination of the Secretary, with the approval of the President, that the refusal of the handlers to sign the marketing agreement tended to prevent the effectuation of the policy of the Act; that the issuance of the order was the only practical means of advancing the interests of producers of milk in the marketing area, and that the order met with the approval of more than two-thirds of the producers. The findings of the Secretary to the effect that the appellant is a handler of milk as defined in the order are supported by the evidence and in accordance with law, and are therefore final under the statute, § 608c(15)(A).

■ Appellant urges vigorously that his failure to comply with certain terms of the order in no way directly affects interstate commerce. It is true that appellant pays the prices announced by the market administrator to the producers from whom he purchases milk. However, if appellant is properly subject to the Act, his nonpayment into the equalization fund tends to defeat the statutory purpose. The remedy for the hardship is legislative and not judicial.

The facts upon which appellant relies for his contention that his disobedience to the order in no way affects interstate commerce are not embodied in this record. He states that the amount of milk he handles is one-third of one per cent in the area; but there is no evidence to this effect. He states that he handles 240 gallons per day against an average of 66,222 gallons per day for the area, none of which figures appear in the record. Employees of the Ewing-Von Allmen Dairy Company, the Oscar Ewing & Sons Dairy Company, and the Model Farms Dairy, testified that the Ewing-Von Allmen Dairy Company is the largest distributor in the area, and the next largest is the Oscar Ewing & Sons Dairy Company; that while these three companies secure a substantial amount of their milk from Indiana, some twenty per cent for the Ewing-Von Allmen Dairy Company, some thirty-one per cent for the Oscar Ewing & Sons Dairy Company, and some twelve per cent for the Model Farms Dairy, all of this milk is commingled with milk purchased in Kentucky, both retail and wholesale, and none of it is sold outside the state, with the exception of four or five per cent of that distributed by the Ewing-Von Allmen Dairy Company which is resold in Indiana. But there is nothing to indicate what percentage of the total volume of milk in the area is handled by these three companies, nor what percentage of the total amount is resold outside of Kentucky. The record does not present the complaint filed in the District Court, and, therefore, the admissions in the answer give no assistance as to the facts which are admitted.

■ Under this meager showing, this court plainly is not justified in setting aside the finding of fact of the District Court that the appellant distributes milk in the marketing area in competition with all other handlers of milk in the area, and

that a substantial portion of the total quantity of milk handled in the marketing area is produced outside of Kentucky and is handled in interstate commerce or in the current thereof.

The judgment is affirmed.