## CHAPMAN v. UNITED STATES.

### No. 12619.

Circuit Court of Appeals, Eighth Circuit.

Dec. 14, 1943.

328

Walter A. Raymond and Dorr H. Carroll, both of Kansas City, Mo. (W. Raymond Hedrick, of Kansas City, Mo., on the brief), for appellant.

David P. Gordon, Sr. Atty., Department of Agriculture, of Washington, D.C., and W. Carroll Hunter, Sp. Asst. to Atty. Gen., (J. Stephen Doyle, Jr., Sp. Asst. to Atty. Gen., Margaret H. Brass, Sp. Atty., of Washington, D.C., and Maurice M. Milligan, U. S. Atty., and Thomas A. Costolow, Asst. U. S. Atty., both of Kansas City, Mo., on the brief), for appellee.

Before SANBORN and RIDDICK, Circuit Judges, and DELEHANT, District Judge.

RIDDICK, Circuit Judge.

The Secretary of Agriculture brought this action to compel the appellant to comply with the provisions of the Secretary's Order No. 13, as amended, issued pursuant to the Agricultural Marketing Agreement Act of 1937, Act of June 3, 1937, 50 Stat. 246, 7 U.S.C.A. § 601 et seq., for the purpose of regulating the handling of milk in the Greater Kansas City Marketing Area, established by the order in question.

The complaint charged that the appellant, a handler of milk in the marketing area, had violated the Secretary's order by his refusal to pay to the market administrator certain sums, by the terms of the order, due from him for a fund, known as the producer-settlement fund, created by the order and administered by the market administrator to maintain uniform prices to the producers of milk sold in the marketing area; and by his failure to pay to the market administrator his pro-rata share of the expense of administering the order and amounts collected by him from producers to discharge the expense of marketing services furnished to the producers by the market administrator. Specifically, the complaint asked for a mandatory injunction compelling the appellant forthwith to pay the sums alleged to be due from him, and for an order of injunction restraining him from further violations of the terms of the order. The appellant answered with a general denial, and also presented a counterclaim asking for the recovery of payments by appellant to the market administrator during the period of his compliance with the order.

The Secretary moved to dismiss appellant's counterclaim as not stating a claim within the jurisdiction of the court, and also moved for a summary judgment. Appellant countered with a motion to dismiss the complaint on the ground that certain provisions of Order No. 13 were beyond the power of the Secretary as defined in the Marketing Agreement Act, that the Act itself was an unconstitutional delegation of legislative power to the Secretary of Agriculture, and that Order No. 13, if enforced, would result in taking the property of the appellant without due process of law.

The District Court sustained the Secretary's motion to dismiss appellant's counterclaim, denied appellant's motion to dismiss the complaint, and granted the Secretary's motion for summary judgment. Appellant was ordered to pay the judgment against him, and further violations of the order by him were enjoined.

By the Agricultural Marketing Agreement Act, the Secretary of Agriculture is given the power, in conformity with the procedure outlined in the Act, and to effect its declared policy, to make and administer market orders of the character involved in the present suit, as a means of establishing and maintaining orderly marketing conditions in interstate commerce for specified agricultural commodities, including milk and milk products. Orders of the Secretary may include all and must include some of the provisions found in the present order. Among the provisions of orders of the Secretary authorized by the Act are the classification of milk according to its use in the marketing area; the fixing of minimum prices, subject to certain differentials not important here, for each established class of milk, or the promulgation of formulae for the determination of such minimum prices; provision for the payment of uniform prices to all producers of milk delivering milk to all handlers in the marketing area, irrespective of the uses made of such milk by the individual handler to whom it is delivered; the establishment of an agency for the administration of the order, usually called a market administrator; the requirement of payment by each handler of his pro-rata share of the cost of the administration of the order; deductions by handlers from amounts due from them to producers for payment to the market administrator to cover marketing and other services furnished to producers; and a method for making adjustments in payments as among handlers to the end that the total sums paid by each handler shall equal the value of milk purchased by him at the minimum prices fixed by the order.

Order No. 13, as amended, did not deviate in any particular from the permissible requirements for such orders laid down in the Agricultural Marketing Agreement Act. The device, adopted in the order for making the adjustments in payments as among handlers and to effectuate the policy of the Act with respect to the payment to producers of uniform prices for all milk delivered to handlers, is an equalization pool or producer-settlement ' fund into which handlers are required to make payments, and from which handlers are permitted to make withdrawals in accordance with the regulations adopted in the order. Stated as simply as may be, the producer-settlement fund is accumulated and distributed in the following manner: Milk distributed in the Greater Kansas City Marketing Area is classified according to its use. Three classes are established, minimum prices fixed for Classes I and II, and a formula provided for determining the minimum price for Class III. Class I includes the highest priced milk, Class III, the lowest. For administrative purposes delivery periods consisting of the calendar months are established. Within the time

specified in the order after the close of each delivery period, each handler is required to report to the market administrator the amount and the use of all milk received by him from all producers. The use value of all milk received from producers by any handler is determined by multiplying the hundredweight of milk of each class by the minimum price per hundredweight applying to each class and adding the results obtained. The uniform price to be paid to all producers is ascertained by dividing the total use value of all milk of all handlers by the total quantity of such milk. The uniform price thus determined is the price which each producer is entitled to receive for milk delivered to handlers in the marketing area during the accounting period.

The use value of the milk received by any handler during a settlement period will be high or low according to the use of the milk. In the case of a handler, the greater part of whose milk is used in a high-priced class, the use value of his milk, determined by multiplying its quantity by the minimum price of its class, may equal or exceed the value of the milk determined by multiplying its quantity by the uniform price which the producer is entitled to receive. And by a similar calculation, the use value of milk of a handler who disposes of it in the lower-priced classes may be less than its value determined by multiplying its quantity by the uniform price to producers. To the end that the total sums paid by each handler for milk received by him from producers shall equal the use value of the milk purchased by him at the minimum prices fixed in the order, those handlers whose milk is used in the high-priced class make payments to the producer-settlement fund, and those handlers whose milk is used in the lower-priced classes are entitled to withdraw from it. A handler liable for a payment to the producer-settlement fund is required to pay to the market administrator, within a specified time after the end of each delivery period, the amount by which the total use value of the milk of producers received by him during the delivery period was greater than the sum obtained by multiplying the total amount of such milk by the uniform price to be paid to producers by the handler; and the market administrator is required to pay to each handler entitled to withdraw from the fund the amount by which the total use value of milk of producers received by him during the delivery period

was less than the sum obtained by multiplying the hundredweight of such milk by the uniform price required to be paid producer by the handler so entitled. By the terms of the order, payments to the producer-settlement fund by handlers and withdrawals from the fund by handlers are made, as required by the Act, for distribution to producers and to insure the payment of the uniform price to all producers delivering milk to all handlers in the market area, irrespective of the use made of such milk by the individual handler to whom it was delivered.

 The validity under the Constitution of the Agricultural Marketing Agreement Act has been sustained by the Supreme Court of the United States as against the attack on the Act by the appellant in the lower court and here. United States v. Rock Royal Co-Op., Inc., et al., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446. The opinion in the case cited discusses the Act in great detail, as well as the Secretary's marketing order there involved. The Secretary's order in the Rock Royal case, in terms substantially identical with Order No. 13, as amended, and its market-wide equalization pool, called a producer-settlement fund, as well as its classification of milk according to use, were approved by the Court as authorized by the Act and as valid under the Federal Constitution. The decision has been reaffirmed in later cases (H. P. Hood & Sons, Inc., et al. v. United States et al., 307 U.S. 588, 59 S.Ct. 1019, 83 L.Ed. 1478; United States v. Wrightwood Dairy Co., 315 U.S. 110, 62 S.Ct. 523, 86 L. Ed. 726), and followed by the Circuit Courts of Appeals in many cases arising under the Act. Crull v. Wickard, 6 Cir., 137 F.2d 406; United States v. Adler's Creamery, Inc., 2 Cir., 107 F.2d 987; and Id., 2 Cir., 110 F.2d 482, certiorari denied 311 U.S. 657, 61 S.Ct. 12, 85 L.Ed. 421; Green Valley Creamery, Inc., v. United States, 1 Cir., 108 F.2d 342, 347.

The assignments of error relied on by appellant and open to our consideration are: (1) That the pleadings and affidavits of the parties supporting and opposing the motion for a summary judgment raised a material issue of fact which precluded a resort to the summary procedure authorized by Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; (2) that the producer-settlement fund set up by Order No. 13, as amended, was not in fact administered as

required by the order, but in the interests of certain favored handlers of milk in the marketing area, who were competitors of appellant; and (3) that the injunction order of the district court against appellant commanding the payment of the money judgment, being enforcible by imprisonment, is contrary to the statutes of the United States and provisions of the Constitution of the State of Missouri prohibiting imprisonment for debt. We find no merit in any of these contentions.

■ As raising a material issue of fact on the motion for summary judgment, appellant relies upon the general denial contained in his answer, and on two affidavits, one of his counsel and one of his own. The material issue of fact is said to be whether handlers of milk entitled to make withdrawals from the producer-settlement fund distribute the amounts withdrawn to their producers, as required by the marketing order, or convert the money so received to their own uses. The affidavit of appellant's counsel reports a conversation between counsel and a representative of the market administrator, in which the latter stated that handlers, making withdrawals from the producer-settlement fund, retained the money withdrawn by them. The affidavit of appellant asserts that the classification of milk according to use, provided by the Secretary's order, is unreasonable and arbitrary and results in a price manipulation in the interests of certain favored handlers of milk in the marketing area. Neither affidavit contains admissible evidence upon the supposed issue of fact. The affidavit of counsel is based upon hearsay and not upon personal knowledge as required by Rule 56 of the Rules of Civil Procedure. The affidavit of appellant states a conclusion of law, based upon his own interpretation of the Marketing Agreement Act, expressly overruled by the Supreme Court in the Rock Royal and H. P. Hood & Sons cases, supra. There is nothing in either affidavit to deny the averments in the affidavits on behalf of the Secretary that the sums claimed in the complaint were in fact due and owing by appellant to the producer-settlement fund in the amounts stated. The mere inclusion in appellant's answer of a general denial of allegations in the complaint, unsupported by any statement of facts admissible in evidence, adds nothing to the force of appellant's affidavits. Piantadosi v. Loew's, Inc., 9 Cir., 137 F.2d 534, 536; and see Walling v. Fairmont Creamery Co., 139 F.2d 318, and Walling v. Reid et al., 139 F.2d 323, decided by this court, opinions filed December 2, 1943. Moreover, the supposed issue, if raised on the motion for summary judgment, was not material to the decision of this case, since violations of the Secretary's order by other handlers of milk in the marketing area, even if they occurred, would not have the effect of invalidating the order nor of conferring upon the appellant the right to violate the order.

■ What has just been said applies with equal force to appellant's second assignment. The order of the Secretary specifically provides that payments into and withdrawals from the producer-settlement fund are required for distribution to producers, and, since there is no admissible evidence in the record to support appellant's claim that such withdrawals by the handlers entitled to them are not distributed by them as required by the order, this assignment is without merit.

■ Concerning appellant's final contention that the judgment of the District Court ordering him to pay the amount found by the court to be owing by him to the market administrator for the producer-settlement fund is void, because exposing the appellant to imprisonment for debt in violation of the statute of the United States (28 U.S. C.A. § 843), and contrary to Article 2, Section 16, of the Constitution of the State of Missouri, Mo.R.S.A., it is sufficient to say that there is nothing in the record to indicate that appellant is unable to pay the judgment against him, or even that he is unwilling to pay it if the judgment of the court below is in accordance with the law. Specific enforcement of the marketing orders is authorized by the Marketing Agreement Act, 7 U.S.C.A. § 608a(6), and mandatory injunctions requiring handlers to make payments of amounts due from them under marketing orders of the Secretary have received approval by the courts of the United States. United States v. Rock Royal Co-Op., Inc., et al., and other cases cited supra. The appellant has not been imprisoned, nor threatened with imprisonment, and, if his contention is well founded, we may not suppose that the District Court will attempt to enforce its judgment by unlawful or unconstitutional means. It will be time enough for the appellant to raise this point when the unlikely contingency occurs or is threatened.

The judgment of the District Court is affirmed.