**BARRON COOP. CREAMERY et al. v. WICKARD, Secretary of Agriculture.**

**No. 8355.**

Circuit Court of Appeals, Seventh Circuit.

Feb. 16, 1944.

---

486

Grover D. Rose and Louis E. Hart, all of Chicago, Ill., for appellants.

J. Stephen Doyle, Jr., and W. Carroll Hunter, Sp. Assts. to Atty. Gen., David P. Gordon, Atty., Department of Agriculture, of Washington, D. C., Wendell Berge, Asst. Atty. Gen., and John J. Boyle, U. S. Atty., of Madison, Wis., for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The plaintiffs-appellants have appealed from a judgment of the District Court upholding the decision of the Secretary of Agriculture which denied them relief from a ruling of the Federal Milk Market Administrator for the Chicago Area reclassifying and repricing certain milk under Federal Milk Order No. 41.

Pursuant to the Agricultural Marketing Agreement Act of 1937, 50 Stat. 246, 7 U.S. C.A. § 601 et seq., the Secretary established the Chicago Milk Marketing Area. After public hearings, the Secretary promulgated Order 41, effective September 1, 1939, regulating the handling of milk in the Area. Section 941.4 of the order provided for the classification of milk sold in the Area as follows:

"Sec. 941.4. *Classification of milk.* (a) Basis of Classification. All milk purchased or received by a handler from producers, associations of producers, and other handlers, including milk produced by him, if any, shall be classified by the market administrator in the classes set forth in paragraph (b) of this section.

"(b) Classes of Utilization. The classes of utilization of milk shall be as follows:

"(1) Class I milk shall be all milk disposed of in the form of fluid milk, and all milk not accounted for as Class II milk or Class III milk.

"(2) Class II milk shall be all milk, except skimmed milk, disposed of in the form of flavored milk and flavored milk drinks, all milk used to produce cottage cheese, and all milk used to produce cream which is disposed of in the form of cream (for consumption as cream), ice cream, and ice cream mix.

"(3) Class III milk shall be all milk used to produce a milk product other than one of those specified in Class II, and all milk accounted for as actual plant shrinkage, but not to exceed 2 percent of the total receipts of milk from producers."

Class I is the highest priced milk, Class II is next highest, and Class III is next. It will be seen from this classification that milk used to make ice cream is in Class II, while milk used to make butter is in Class III. The purpose of this classification according to utilization is to guide the Administrator in periodically setting the uniform minimum price to be paid producers for all milk purchased during the period. All producers receive the same price. Adjustments are then made with the first handlers through the producer-settlement fund. If a first handler has disposed of milk in a use which has been assigned a higher price than the uniform minimum price, he must pay the difference into the settlement fund. On the other hand, if a first handler has disposed of milk in a use which has been assigned a lower price than the uniform minimum price, he is paid the difference out of the settlement fund. The prices assigned to each use classification, as well as the uniform minimum price, are revised each period.

Order 41 remained in force until July 1, 1940, when there became effective an amended order specifically providing for the reclassification of milk used to produce butter where subsequently such butter was used to make ice cream or ice cream mix.[1]

During May and June, 1940, while the original order was still in effect, the plaintiffs, who were cooperative associations in

---

1 "Classes of Utilization.—Subject to the conditions set forth in paragraph (a) of this section, the classes of utilization of milk shall be as follows: .

"(1) Class. I milk shall be all milk disposed of in the form of fluid milk, except such milk as is used for purposes for which no approval by health authorities

Wisconsin, purchased milk from producers which they manufactured into unsalted butter. They sold this unsalted butter to the Bowman Dairy Company of Chicago, who in turn sold it to the Goldenrod Ice Cream Company of the same city for use in making ice cream. There is no intimation that these transactions were not bona fide or that they were part of a scheme to avoid a higher classification under Order 41. The plaintiffs reported the milk thus used to the Administrator of the Chicago Area as Class III milk, the classification for milk used to make butter. The Administrator, however, claimed that the proper classification was Class II, because the butter had ultimately been used by the Goldenrod Company to make ice cream. The difference in price between Class II and Class III for the two months amounted to a total for both plaintiffs of over $11,000.

The plaintiffs petitioned the Secretary of Agriculture for relief from this claim of the Administrator. After a hearing, the Secretary sustained the Administrator. The plaintiffs then filed a petition for review with the District Court for the Western District of Wisconsin. The Secretary of Agriculture filed an answer and a motion for summary judgment which incorporated the transcript of the proceedings on the plaintiffs' petition before the Secretary. The District Court sustained the Secretary's motion for summary judgment and entered judgment that the Secretary's action was in accordance with law.

There is no dispute as to the facts. The question is whether Order 41 authorized the rescaling upward of the classification of milk used to manufacture butter, where the purchaser of that butter twice removed used it to make ice cream?

Paragraph (c) of Section 941.4 of the original Order 41 provided:

"(c) Interhandler and Nonhandler Sales. Milk disposed of by a handler to another handler, and milk disposed of by a handler to a person who is not a handler but who distributes milk or manufactures milk products shall be classified as Class I milk: Provided, That if the selling handler on or before the 7th day after the end of the delivery period furnishes to the market administrator a statement which is signed by the buyer and seller that such milk was disposed of as Class II milk or Class III milk, such milk shall be classified accordingly, subject to verification by the market administrator."

From this, the Secretary argues that since the order provided for a scaling downward of the classification if the disposition of the milk so warranted, it is only fair that a scaling upward be allowed where the milk was ultimately used for a purpose calling for a higher classification, no matter how many times removed from the original handler the changed use took place. We are not required to refute this argument, which might very properly be made to a Congressional committee or to the Secretary at a public hearing where he was seeking to formulate an order. We are not considering the kind of an order the Secretary could have made but the kind of an order he did make. In the order as originally promulgated and in force when the transactions in this case took place, we find no such authorization for reclassification upward.

By the terms of Order 41, the classification of the milk was based upon the disposition made of it by the handler. If he *disposed* of milk as fluid milk or in some

in the marketing area is necessary, and all milk not accounted for as Class II milk, Class III milk, or Class IV milk.

"(2) Class II shall be all milk, except skim milk, disposed of in the form of flavored milk and flavored milk drinks, and all milk, the butterfat from which is disposed of in the form of cream, sweet or sour, cottage cheese, buttermilk, frozen cream, ice cream, and ice cream mix.

"(3) Class III milk shall be all milk the butterfat from which is used to produce a milk product other than one of those specified in Class II and Class IV, and all milk disposed of for those purposes for which no approval by health authorities in the marketing area is necessary.

"(4) Class IV milk shall be all milk the butterfat from which is used to produce butter and cheese, except cottage cheese, and all milk accounted for as actual plant shrinkage: Provided, That such plant shrinkage shall not exceed 2 percent of the total receipts of milk from producers. Any handler whose report claimed the original classification of milk in this class shall be liable under the provisions of Sec. 941.8(g) for the difference between the Class IV and Class II prices for the delivery period in which the Class IV classification was claimed on any such milk, if the butterfat used in the production of butter is subsequently used in the production of ice cream or ice cream mix."

manner other than as Class II or Class III, it was Class I milk. If he *disposed* of milk as flavored milk or flavored milk drinks, as cottage cheese, or to produce cream which is *disposed* of in the form of cream, ice cream, or ice cream mix, it was Class II milk. Class III was all other milk used to produce milk products.

Nothing in this order required the handler to look beyond his own disposition of the milk. Nothing in the order required him to pursue the milk and milk products to see in what use classification they were ultimately disposed of. If the handler disposed of the milk in the form of butter in good faith and not colorably to avoid this order, the classification was fixed by the disposition he made of the milk and not by the disposition or utilization some one else made at some subsequent time. The plaintiffs' sale of their butter to the Bowman Dairy Company was the disposition for which they were required to account. The resale of the butter in the form of ice cream by Bowman's vendee was not a disposition made by the plaintiffs for which they could be held accountable under the order.

■ Administrative orders, like statutes, are not to be given strained and unnatural constructions. As was said in Lynch v. Alworth-Stephens Co., 267 U.S. 364, 370, 45 S.Ct. 274, 276, 69 L.Ed. 660, quoting from the Circuit Court's opinion, Id., 8 Cir., 294 F. 190, 194: " * * * the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover." The language of a regulation should be considered as intended to guide and not to entrap those who are governed by it. If the plaintiffs are held accountable for the Secretary's unnatural and unusual construction of Order 41, they are being saddled with a responsibility not delineated by the order and with a surprise burden impossible to anticipate, which, unwarned, they had no opportunity to take steps to protect themselves against. The order, instead of a blazed trail for their guidance, would be a snare for their entrapment. Administrative orders of that character are unlawful.

■ It is undisputed in the evidence that the construction which the Secretary seeks was not considered at the public hearings held for the formulation and promulgation of Order 41. As we have stated, the amount involved in this case is for the allegedly erroneous classification of milk during the months of May and June, 1940. Order 41 was amended effective July 1, 1940, to provide expressly for the liability which the Secretary here would place upon the plaintiffs. This is tantamount to an admission by the Secretary that the order as originally promulgated did not cover the reclassification upward which he would compel the plaintiffs to assume in this case. Helvering v. Safe Deposit & Trust Co., 4 Cir., 121 F.2d 307, 311; United States v. Carpenter, 10 Cir., 84 F.2d 813, 814; United States v. Bashaw, 8 Cir., 50 F. 749, 754. This amendment was not a mere change of language for the sake of clarification. The reach and the scope of this amendment gave more than clarification; they gave implementation not previously present in the order. Indeed, the amendment expressly provides for reclassification upward and was undoubtedly adopted to fill what was thought to be a gap in the original order.

■ We think it quite clear on this record that the Market Administrator's demand upon the plaintiffs was unlawful and not authorized by Order 41 as it existed at the time of the sales in question. The Secretary's motion for summary judgment should have been denied.

The judgment is reversed and the cause is remanded, with directions to proceed in accordance with this opinion.