### WETMILLER DAIRY & FARM PRODUCTS CO., Inc., v. WICKARD, Secretary of Agriculture.

#### Civil Action No. 1425.

District Court, W. D. New York.

May 15, 1944.

Merritt A. Switzer, of Pulaski, N. Y., for plaintiff.

George L. Grobe, U. S. Atty., of Buffalo, N..Y., and Thomas F. Green, Jr., Atty., Office of Solicitor, U. S. Dept. of Agriculture, of Washington, D. C., J. Stephen Doyle, Sp. Asst. to Atty. Gen., and Clarence H. Girard, Atty., Office of Solicitor, U. S. Dept. of Agriculture, of Washington, D. C., for defendant.

KNIGHT, District Judge.

The plaintiff has moved for summary judgment. The defendant does not oppose.

The plaintiff is a milk handler. It purchased and received milk from producers at Cohocton, New York. It separated and sold sweet cream to Heicklen Farms, Inc., and delivered it at Hoboken, New Jersey. from the last-mentioned place this cream was taken to the premises of Fairmont Creamery Company at New York, New York, where it was placed in refrigerators and at some time sold by Heicklen Farms, Inc., to the Fanny Farmer Candy Shops, Inc., in Brooklyn, New York, and delivered there by direction of the Fairmont Creamery Company.

Plaintiff's Cohocton plant is outside of the New York City milk marketing area, but the plaintiff was a handler of milk coming within the provisions of Order No. 27 (C F R, 1938 Sup., part 927) relating to milk handling in New York City.

The shipments in question covered a period from July 1, 1939, to March 31, 1940, and reports of such sales were made as required monthly to the market administrator, and such reports purported to show that the cream was entitled to be classified as III–A. This classification was made on the basis that the delivery to the Fanny Farmer Candy Shops, Inc., was the "second plant" and that the cream was utilized there in the making of milk chocolate.

Thereafter the market administrator reclassified the cream so sold as II-A result-

ing in an additional charge against the plaintiff in the sum of $5,624.66, which was deducted from the milk pool from the amount due the plaintiff for cream for the month of June, 1940. As provided by Section 8c (15) (A) of the Agricultural Marketing Agreement Act of 1937, 50 Stat. 246, 7 U.S.C.A. § 608c (15) (A), plaintiff petitioned for a hearing on this reclassification, and after such hearings the classification of the cream as II-A was sustained by the Secretary to the Commissioner of Agriculture.

Plaintiff now brings this suit to review the action of the Secretary and for a refund of the sum hereinbefore stated, as authorized by Section 8c(15) (B) of the Agricultural Adjustment Act of 1933 as amended and reenacted and amended by the Agricultural Marketing Agreement Act of 1937, 50 Stat. 246, 7 U.S.C.A., § 608c (15) (B).

▉▉ The authority of the court is limited to determining whether or not the rulings of the Secretary are in accordance with law. Queensboro Farms Products, Inc. v. Wickard, 2 Cir., 137 F.2d 969; Crull v. Wickard, 6 Cir., 137 F.2d 406. The Court will not pass upon the weight of the evidence before the Secretary. If his findings are supported by substantial evidence, they will not be disturbed. Swayne & Hoyt v. United States, 300 U.S. 297, 57 S.Ct. 478, 81 L.Ed. 659; National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368; United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429. This is a rule of determination which is applicable in the consideration of decisions of administrative boards.

The plaintiff asserts its right to maintain this suit upon two grounds: First, that the Fairmont Creamery Company premises did not constitute a second plant as that term was used in Official Order No. 27, Article III, section 1, as it existed prior to the amendment effective May 1, 1940; that the Fanny Farmer Candy Shops, Inc., constituted such plant; and, therefore, the plaintiff was entitled to classification of III–A, as provided by Article III, section 2, (4) of said Order; and second, that the market administrator was not justified in re-classifying the cream on the basis of a change of administrative interpretation when any possibility of recoupment was ended. It is the contention of the government that the Fairmont Creamery Company premises constituted a plant and that the cream was

properly classified II-A by virtue of said Order 27.

The Agricultural Adjustment Act provides that the Secretary of Agriculture shall, subject to its provisions, make orders applicable to those engaged in the handling of any agriculture commodity or product therefrom specified in the Act. Section 8c (5) provides that orders issued pursuant to the Act in the case of milk and its products shall contain certain terms and conditions, among which are:

"(A) Classifying milk in accordance with the form in which or the purpose for which it is used, and fixing, or providing a method for fixing, minimum prices for each such use classification which all handlers shall pay, (as plaintiff) * * *. Such prices shall be uniform as to all handlers" subject as to certain adjustments.

The orders involved in this suit regulate only the handling of milk in the New York Metropolitan area, and all of the transactions in question here arose prior to certain amendments to Order 27, which became effective May 1, 1940.

Order No. 27 was issued pursuant to the provisions of the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq. It provided that "handlers" (plaintiff's are such as defined in the Act) regulated under this order shall pay for milk from producers prices according to a method called by the trade the "classified class plan."

Article III, section 1 of Order 27, in part, reads: " * * * if milk is moved as cream, * * * from any plant outside the marketing area to any second plant, classification of such milk at the first plant may be in accordance with its utilization at such second plant."

Article III, section 2, Classes of Utilization—2 reads: "Class II-A milk shall be all milk the butterfat from which leaves * * * a plant in the form of cream, except as set forth in paragraphs 5 and 7 of this section." (5 and 7 have no application here.)

Article III, section 2—4 reads: "Class III-A milk shall be all milk the butterfat from which leaves, or is on hand at, a plant in the form of * * * milk chocolate."

The record discloses no dispute as regards the material evidentiary facts. There is a contradiction in the testimony as to Heicklen Farms' relation to the shippers. There is direct testimony that this company was the purchaser of the cream in question, and

there is testimony that it acted merely as a broker. Any question of the relationship of plaintiff and Heicklen Farms does not, however, affect the decision herein. The Manager of the Fanny Farmer Candy Shops, Inc., made an affidavit that this cream was used exclusively "in the manufacture of milk chocolate and candy." There is no evidence to the contrary though the plaintiff, in its brief, asserts that it was used for the "manufacture of milk chocolate" alone.

It is stipulated that the Fairmont Creamery Company premises were rented by Fairmont from the Manhattan Refrigerating Company; that they consisted of first and second floors of a six-story building; that Fairmont received here butter, eggs, poultry, cheese, frozen fruits and sour cream; that it had what is known as a Class B permit from the Department of Health of the City of New York to distribute milk and a permit to whip butter; that it did whip cream; that the facilities of these premises included cold or refrigerating rooms, offices, machinery for mixing and whipping butter and certain other related equipment; that these premises received sour cream in bulk and also in glass and paper containers; but that sour cream is the only fluid milk there handled by Fairmont; and that the Fairmont Creamery Company filed city plant reports with the Administrator over a period beginning July, 1939.

█ Under these facts, the Secretary in applying the ordinary meaning to the word "plant" was justified in finding that these premises constituted a second plant. Irrespective of the uses to which these premises were put, other than as used for the purpose of the shipments in question, it is also believed that the premises constitute a plant and thus the second plant within the provisions of the Order.

█ The language of the court in Queensboro v. Wickard, supra, is directly in point upon comparable facts. It is true that in the Queensboro case the second plant was a plant owned by the original handler, but that makes no difference (Waddington Milk Co., Inc. v. Wickard, 2 Cir., 140 F.2d 97 for, as here, it was used merely as a transfer point. In the Queensboro case the cream was transported in large reefer trucks by the handler from its receiving plant outside the New York marketing area to its distributing plant in Long Island City within the marketing area. On delivery there the cream was transferred, either to and from the platform of the plant building to small trucks or directly from the reefer trucks to small trucks alongside the distributing plants. There the court said: "The question remains whether the Secretary correctly interpreted his orders in deciding that appellant's Long Island City plant is a 'second plant.' (quoting Article III, section 1 of the order of September 1, 1938) Appellant argues that there is no 'utilization' at its Long Island City plant, since all that there takes place is, at most, a transfer of the cream from large to smaller trucks; that consequently the Long Island City plant is not a 'second plant' within the meaning of the exception; that, accordingly, in each instance, 'the second plant' is a plant of one of its customers who there converts the cream into ice-cream and thence ships it for sale * * *. Appellant says in its brief that its activities at its second plant were 'a necessary incident of delivery'; * * * The milk" (It was cream) "was shipped from appellant's Long Island City plant to its customers in the form of cream. It was not, then, improper for the Secretary to hold that appellant's 'utilization' of the milk at that plant, its 'second plant,' was as cream."

█ The court there was specifically construing Article III, section 1 of Order No. 27, and this construction was given separate and apart from a question of the validity of the Order itself. Finding that the Fairmont Creamery Company premises constitute a "second plant," it is not necessary to consider the question of whether the Fanny Farmer Candy Shops, Inc., premises were a plant. However, we think they meet the definition of a plant, both within ordinary understanding of the word and as it is intended to be construed in the Act. Further, it may be said that assuming that the Fanny Farmer Candy Shops, Inc., is the second plant intended under the provisions of the Order, the plaintiff would not be entitled to a classification as III-A for the reason that the record discloses that this cream was utilized not only for milk chocolate but also for candy. How much went into milk chocolate and how much into candy does not appear. If cream is classified on the basis of its use as candy other than milk chocolate, it falls under Class 1 as provided in Article III, Section 2 which includes all milk for which the utilization is not established by some other classification, and, of course, under Class 1 the re-

sults would be less favorable to the plaintiff than as though made in Class II-A.

There is no question that the meaning of the word "plant" has led to a great deal of confusion, and it would seem that some definition might well have been given in the statute or under the Orders, but it is possible that the difficulties which might arise from such action are not foreseen by the Court.

In construing Order No. 27, supra, the Court in United States v. Rock Royal Co-Op., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446, has considered at great length the provisions of this Order and pointed the discretionary right in the officer administering its provisions. The plaintiff herein places special emphasis upon the decision in Barron Coop. Creamery v. Wickard, 7 Cir., 140 F.2d 485, but it seems that facts there are not comparable with those presented in the instant case. It is said by the plaintiff that cases are comparable in the respect that liability was imposed against the handler as the result of a change in interpretation made retroactively. The Barron case involved a situation where the milk left the first plant in a form of a lower classification than that which it later took and which the administrator used as a basis of classification. There is no question in the Barron case of the meaning of the word "plant." We are not here concerned, as the court there was, with the effect of the application of any amendment retroactively. There was no change in Order No. 27 during all the periods in question here, and the administrator has not, as we understand it, sought to interpret the provisions of the Order as amended by the Act effective May 1, 1940. In the instant case the administrator has never ruled that the Fairmont Creamery Company premises were not a plant. As heretofore pointed out, the reports by the plaintiff were submitted and the money was distributed in accordance with the reports as made.

■ There is no merit seen in the point made by the plaintiff that the administrator was not justified in reclassifying the cream upon the basis of any changed interpretation made long after the sale. In the Queensboro case [137 F.2d 981], the question was raised that the evidence shows "that, for many months, the Market Administrator acquiesced in appellant's interpretation of the orders. But even if the uncontradicted evidence so showed, that fact would be irrelevant; nothing in the Act or in the orders confers on the Market Administrator,

the Secretary's subordinate, the power to bind the Secretary by his own unauthorized interpretations."

So here the Secretary was not bound by the interpretation of the Orders by the Market Administrator. In the Crowley's Milk Co., Inc., matter, on March 23, 1942, the hearing officer found that the Patterson property of Crowley's was not a plant though theretofore he had found that the Fairmont Creamery Company was a plant. It does not appear that either of these findings was based upon the amendments of 1940, though each of them was made subsequent to the effective date of the amendment of 1940. The two cases can be distinguished in material points, but it is not necessary to do so, since the findings in the Crowley case did not bind the Secretary.

The complaint must be dismissed.

Findings, if deemed necessary, may be submitted to accord herewith.