**MGPC, INC., a Wyoming corporation, Plaintiff-Appellee,**

v.

**DEPARTMENT OF ENERGY, et al., Defendants-Appellants.**

**No. 10–52.**

Temporary Emergency Court of Appeals.

Argued Dec. 10, 1984.

Decided May 3, 1985.

Don W. Crockett, with whom John L. Gurney, Dept. of Energy, Washington, D.C., and Richard K. Willard, Dept. of Justice, Washington, D.C., were on briefs for defendants-appellants.

Richard T. Williams, with whom Howard J. Bressler and David L. Huard of Kadison, Pfaelzer, Woodard, Quinn & Rossi, Los Angeles, Cal., were on the brief for plaintiff-appellee MGPC, Inc.

Before JAMESON, CRAIG and McNICHOLS, Judges.

McNICHOLS, Judge.

The United States Department of Energy (DOE), the defendant below, brings the present appeal from an order of the United States District Court for the District of Wyoming granting Summary Judgment to MGPC, Inc., (MGPC) the plaintiff below. See *MGPC v. Duncan,* 581 F.Supp. 1047 (1984). For reasons stated and discussed below, we reverse.

I.

FACTUAL BACKGROUND

Pursuant to the Economic Stabilization Act of 1970, 12 U.S.C. Section 1904, note (ESA) and the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. Section 751 et seq. (EPAA), the Department of Energy and its predecessor agencies [1] promulgated, in 1973, regulations governing the maximum selling prices at which crude oil refiners and natural gas processors could sell their products.

At all times material herein, MGPC (formerly known as McCulloch Gas Processing Corporation, Inc., see *MGPC, Inc. v. Department of Energy,* 673 F.2d 1277, 1279 (1982)) was a processor of natural gas. MGPC purchased "raw" natural gas under "net back" contracts. Pursuant to the "net back" contracts MGPC would refine or process the natural gas into natural gas liquids (NGL) or natural gas liquid products (NGLP), such as propane and butane, for sale to commercial and residential customers. MGPC paid the "raw" gas producer a set percentage of the proceeds of the sale of the NGLP with an allowance for the residue gas in exchange for the "wet" gas. As a processor of NGLP, MGPC was, as of 1974, subject to the Department of Energy's price regulations set-out in Subpart E of Part 212, 10 C.F.R. See 10 C.F.R. Section 212.31.

---

**1.** The authority to promulgate regulations to enforce the relevant provisions of the ESA and the EPAA was initially vested in the Cost of Living Council. (CLC) The president delegated the authority to the Federal Energy Office (FEO) in Executive Order No. 11,748, 39 F.R. 33,575 (December 6, 1973). After passage of the Federal Energy Administration Act of 1974, 15 U.S.C. Sections 761 et seq., FEO's rulemaking and enforcement functions were transferred on June 27, 1974 to the Federal Energy Administra-

tion (FEA). Executive Order No. 11,790, 39 F.R. 185. The authority was then transferred to Defendant DOE on February 7, 1978 after passage of the Department of Energy Organization Act, 42 U.S.C. Sections 7101 et seq. by Executive Orders Nos. 12,099, 42 F.R. 46,267 (9–15–77) and 12,038, 43 F.R. 957. President Reagan terminated Defendant DOE's price control authority on January 28, 1981. Executive Order No. 12,287, 46 F.R. 9909.

On June 6, 1974 MGPC applied to the Office of General Counsel (OGC) and Office of Exceptions and Appeals (OEA) of the Federal Energy Administration (FEA) (a predecessor agency of the Department of Energy) for exception relief from the FEA's pricing regulations set forth in 10 C.F.R. Section 212.82. These regulations restricted MGPC to MGPC's May 15, 1973 base price of 6.88 cents per gallon. MGPC petitioned the OEA to allow MGPC to charge a weighted average of 27.7 cents per gallon for MGPC's NGLPs. MGPC submitted financial statements to the OEA which statements evidenced a projected operating loss for MGPC of $764,000 during 1974 if MGPC were bound by the May 15, 1973 base price.

MGPC's requested price increase of 20.82 cents per gallon would more than compensate MGPC for its projected $764,000.00 loss. MGPC maintained, however, that the 20.82 cent per gallon increase was necessary to compensate MGPC for a competitive disadvantage MGPC suffered as a result of the price regulations. The competitive disadvantage arose because the price regulations imposed in Subpart E of Part 212 of 10 C.F.R. were tailored to controlling the prices at which producers of crude oil sold their product and were ill-suited for processors of NGLPs. The Subpart E regulations were ill-suited for natural gas processors because natural gas processors, using the net-back supply contracts, were unable to pass through their increased production costs and were, as a result, locked into their May 15, 1973 base prices. Integrated crude oil refiners, on the other hand, could average prices for NGLPs, whether produced from crude oil or natural gas, and thus could pass through increased product costs for crude oil up to the maximum lawful selling price for their NGLPs. The integrated crude oil refiners, who also used net-back contracts in purchasing new natural gas supplies, could, therefore, pay producers of natural gas more than natural gas processors could pay for new natural gas supplies. Processors of natural gas, therefore, could not compete for new gas reserves. Consequently, MGPC could not obtain enough new gas reserves to operate at full capacity.

On September 12, 1974 the FEA denied plaintiff's requested exception relief on the ground that the MGPC failed to substantiate its claim that it was incurring substantial hardships or gross inequities different in kind than all natural gas processors. MGPC appealed the FEA's Decision and Order and on November 22, 1974 the OEA of the FEA reversed the September 12 denial of exception relief. (Record on Appeal at 1567; hereinafter cited (R. ——)). In the November 22, 1974 Decision and Order, the OEA acknowledged that the FEA had indicated, in a preface to proposed Subpart K of Part 212 of 10 C.F.R., that the FEA was aware Subpart E of 10 C.F.R. Part 212 was ill-suited to the customs and needs of the natural gas processing industry and, as a result, many independent natural gas processors' were experiencing operating difficulties which could, if they had continued, have had serious adverse long-time consequences. (R. 1571). The OEA declined to award exception relief to MGPC on the basis that Subpart E was ill-suited to natural gas processors because "it would be inappropriate for exception relief to be granted at this time in view of the fact that the present regulatory system applies in the same way to all independent natural gas processors." (R. 1571). The OEA declined to award exception relief because of the ill-suited regulations for the further reason that the FEA had recognized the problem natural gas processors faced and was preparing to issue the Subpart K regulation to remedy the inequity.

On the other hand, the OEA recognized that MGPC would suffer a serious financial hardship in 1974. The OEA determined, therefore, that MGPC was entitled to "interim exception relief" as follows:

> In order to alleviate the serious hardship found to exist the FEA has determined that interim exception relief should be provided at this time pursuant to which MGPC would be permitted to adjust its May 15, 1973 selling prices for the pur-

pose of Section 212.82 so that if the resultant price increases were apportioned over the course of 1974 MGPC would not have experienced the $764,000 operating loss which it projects it will incur during its 1974 fiscal year. A further determination has been made that the FEA Office of Exceptions and Appeals should retain jurisdiction over this matter so that MGPC may petition for further exception relief in the event the FEA regulations which are generally applicable to independent natural gas processors are not revised by December 15, 1974 so as to alleviate any gross inequity or further serious hardship which MGPC alleges that it is experiencing. (R. 1572).

In light of the OEA's determination that MGPC was entitled to 1.5 cents of exception relief the OEA ordered:

(4) Notwithstanding contrary provisions in 10 CFR, Part 212 MGPC may determine its May 15, 1973 selling price for propane, butane and natural gasoline for purposes of Section 212.82 by determining the weighted average price at which each such product was lawfully sold to each class of customer on May 15, 1973 and by then adding to each of those prices an amount necessary to increase the overall weighted average selling price for the covered products which MGPC obtains for natural gas by no more than 1.5 cents per gallon of natural gas liquids processed.

The OEA conditioned the 1.5 cents of exception relief as follows:

(5) In the event the FEA promulgates new generally applicable regulations which govern the determination of the maximum permissible selling prices of propane, butane and/or natural gasoline, the FEA may by written order rescind this interim exception approval in whole or in part; provided that, prior to taking any such action, the FEA shall inform the McCulloch Gas Processing Corporation of the proposed action and afford MGPC of an opportunity to comment upon that proposed action.

As indicated in the portions of the November 22, 1974 Decision and Order previously quoted, the OEA was willing to reconsider MGPC's request for exception relief if the FEA did not issue new regulations generally applicable to natural gas processors by December 15, 1974. The FEA did not promulgate the new regulations prior to December 15, 1974 and, as a result, MGPC renewed its request for further exception relief. Before the FEA was able to act upon MGPC's request, the FEA promulgated the new generally applicable regulations. The regulations, set out in 10 C.F.R. Part 212, Subpart K, were issued on December 24, 1974 and were to become effective on January 1, 1975. The Subpart K regulations permitted MGPC to raise its prices for propane by 7.8 cents per gallon.

As a result of the promulgation of the Subpart K regulations the OEA, on January 13, 1975, informed MGPC, via a letter from the Assistant Director of OEA Richard Tedrow, that MGPC's December 16, 1974 request for further exception relief was denied. The letter stated that if MGPC determined that the provisions of 10 C.F.R., Part 212, Subpart K, were "insufficient to alleviate the serious hardship or gross inequity which MGPC was experiencing prior to the promulgation of Subpart K, the firm should request an exception from that regulation." (R. 1679).

Pursuant to the January 13, 1975 letter, MGPC filed on January 15, 1975, an application for exception relief from the new Subpart K regulations. In MGPC's application for relief from Subpart K, MGPC stated that the regulated sales price per gallon was insufficient to allow MGPC to pass through MGPC's increasing costs to its customers. In the application MGPC claimed the regulated sales price as of the date of the application was 16.2 cents per gallon. Since the actual regulated sales price under Subpart K was 14.7 cents per gallon, as of the date of application, it is apparent that MGPC was proceeding on the theory that MGPC could apply the 1.5 cents per gallon of exception relief from

the Subpart E regulations to the regulated price under Subpart K.

Also on January 15, 1975 Frank Zarb, Administrator of the FEA, replied to a December 6, 1974 letter from M. Witte, Vice Chairman of the Board of McCulloch Interstate Gas Corporation (an affiliated company of MGPC). The January 15, 1975 Zarb letter stated that the 1.5 cents of exception relief was "no longer relevant" in light of the new Subpart K regulations. (R. 3055).

On February 19, 1975 the OEA responded to MGPC's petition for exception relief from the Subpart K regulations. In the response the OEA implicitly informed MGPC that MGPC was not entitled to use the 1.5 cents of exception relief the OEA previously granted MGPC in connection with the Subpart K regulations. The OEA so informed MGPC by directing MGPC to use 14.7 cents, not 16.2 cents, in submitting certain pro forma statements to the OEA; which statements related to MGPC's new request for exception relief (R. 1764). MGPC ignored the OEA's directive and claimed the 1.5 cents of exception relief when it submitted the pro forma statements referenced above. (R. 1829).

On March 6, 1975 the FEA issued a Supplemental Order to the November 22, 1974 order. The March 6 order stated that the November 22 relief was granted only with respect to Section 212.82 (a Subpart E regulation). Because MGPC was afforded more relief under Subpart K than under the interim exception determination, the OEA rescinded the exception relief granted to MGPC on November 22, 1974. (R. 1591–93). The order was to be a final order unless MGPC filed information within ten days of receipt with OEA which would show cause in law or fact why the FEA action was erroneous. (R. 1593). Counsel for MGPC was served by certified mail on March 11, 1975. (R. 1594). MGPC filed material in opposition to this order on March 21. (R. 1601). The OEA made no formal response to the material MGPC filed on March 21. On May 15, 1975, however, the OEA denied MGPC's January 15, 1975 request for exception relief from Subpart K. In the May 15, 1975 denial the OEA indicated that the information MGPC submitted in response to the March 6, 1975 order was insufficient to establish cause why the March 6, 1975 order should not be final and, therefore, held that the March 6, 1975 order had become final.

Even though the May 15, 1975 denial reaffirmed the March 6, 1975 termination of the 1.5 cents of exception relief, MGPC continued to apply the 1.5 cent per gallon relief until January 30, 1981 when the DOE's authority was terminated by Executive Order Number 12287, 48 Fed.Reg. 9909 (January 30, 1981). MGPC claimed the FEA had orally represented to MGPC that MGPC could properly continue to apply the November 22, 1974 exception relief.

In December of 1977 the DOE completed an audit of MGPC and concluded that the 1.5 cent relief was only applicable under Subpart E. The auditor concluded that MGPC could avail itself of the 1.5 cents of exception relief only if MGPC priced its products in accordance with Subpart E. If MGPC chose to price its products pursuant to Subpart K, then MGPC could not use the 1.5 cents of exception relief previously granted. In January 1978 a Notice of Probable Violation was issued which alleged that MGPC accumulated over $3 million in overcharges. After MGPC's reply in March the DOE, in January 1979, ordered MGPC to make restitution of the overcharge with interest.

On September 21, 1979 MGPC filed a complaint in the United States District Court for the District of Wyoming. MGPC alleged that the 1.5 cents interim relief was inadequate to alleviate its hardship and that the relief had not been effectively terminated upon the promulgation of the new Subpart K regulations or by virtue of the OEA's orders of March 6 and May 15, 1975. (R. 2339–40). MGPC sought to permanently enjoin the DOE from denying MGPC the continued use of the 1.5 cents of exception relief.

On September 7, 1982 MGPC filed a Motion for Summary Judgment. The DOE moved to strike MGPC's Motion for Sum-

mary Judgment on the grounds that the affidavits MGPC filed contemporaneously with its motion contained information not contained in the official administrative record. In the alternative, the DOE moved pursuant to Rule 56(f) for a continuance of the Motion for Summary Judgment in order to take the discovery necessary to controvert the evidence contained in MGPC's new affidavits. The DOE did not respond to MGPC's motion for summary judgment prior to a "Hearing on All Pending Motions" on September 13, 1983. The DOE contended that the court should rule on the DOE's preliminary motions and subsequently allow the DOE time in which to respond to MGPC's Motion for Summary Judgment. The district court denied the DOE's preliminary motions and, without allowing the DOE an opportunity to formally respond to MGPC's Motion for Summary Judgment, granted MGPC's motion.

## II

### ISSUES ON APPEAL

A. Whether the District Court erred in holding, as a matter of law, that the November 22, 1974 exception relief order was not terminated or rescinded by the March 6, and May 15, 1975 orders.

B. Whether the District Court erred in holding that the November 22, 1974 exception relief order was not terminated, and whether the November 22, 1974 order was merely terminated rather than rescinded and thus void ab initio.

C. Whether the District Court erred in holding, as a matter of law, that the exception relief awarded to MGPC could be applied in conjunction with 10 C.F.R. Part 212, Subpart K.

D. Whether the District Court erred in ruling, as a matter of law, that the exception relief awarded to MGPC could be applied retroactively from November 22, 1974 back to January 1, 1974.

## III

### DISCUSSION

Before addressing the merits of the present case it is important to note the standard of review this court must apply to the district court's decision. An order granting summary judgment to a party can be entered and can be affirmed on appeal only if "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Whether a genuine issue as to any material fact exists in a given case is seldom an easy question. In the present case the question of whether a genuine issue of material fact exists is complicated by the fact that the trial court did not allow the government the opportunity to formally respond to MGPC's Motion for Summary Judgment. The trial court, therefore, did not have the benefit of opposing affidavits or other documentary evidence to aid it in determining whether a genuine issue of material fact existed.

■ Because a party has not formally presented opposing evidentiary matter does not, ipso facto, mandate that no genuine issue of material fact exists and that summary judgment be entered for the moving party. Rather the burden is on the moving party to show that no genuine issue exists as to any material fact.

The party opposing a motion for summary judgment is entitled to have all facts viewed in the light most favorable to it and to all reasonable inferences which may be drawn from the facts. *Standard Oil Co. v. Department of Energy*, 596 F.2d 1029, 1065 (TECA 1978). The moving party must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the non-moving party has raised by pleadings a genuine issue of material fact, and the evidentiary matter in support of the motion for summary judgment does not establish the absence of such issue, summary judgment must be denied even though no opposing evidentiary matter is presented. See *Adickes v. Kress & Co.*, 398 U.S. 144, 159–160, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970); *Sher-*

*man v. British Leyland Motors, Ltd.,* 601 F.2d 429, 439 (9th Cir.1979).

*McWhirter Distributing Co., Inc. v. Texaco, Inc.,* 668 F.2d 511, 519 (1981); *See also Pacific Service Stations Co. v. Mobil Oil Corp.,* 689 F.2d 1055, 1063–64 (TECA 1982).

■ If the moving party is able to make out a *prima facie* showing that no genuine issue of material fact exists, the opposing party cannot rest on the allegations in his complaint. Rather, the opposing party must present affidavits and/or other depositions, admission, etc., which set forth the disputed facts, Fed.R.Civ.P. 56(c). Otherwise, the undisputed statements in the movant's support materials are taken as true. *Smith v. Saxbe,* 562 F.2d 729, 733 (D.C.Cir.1977).

■ The import of the foregoing is that the DOE's failure, whether it be due to the DOE's or the trial court's error, to respond to MGPC's Motion for Summary Judgment does not automatically dictate that the facts, as alleged by MGPC, are true and that MGPC is entitled to judgment as a matter of law. Instead, this court must independently review the record to determine if material issues of facts do exist and if no such issues exist, determine whether MGPC was entitled to judgment as a matter of law. With these principles in mind we focus our attention to the facts at hand.

A. The March 6, 1975 Supplemental Order, together with the May 15, 1975 order, effectively rescinded the 1.5 cents of exception relief awarded to MGPC on November 22, 1974.

The trial court held that the March 6, 1975 Supplemental Order did not terminate or rescind the November 22, 1974 exception relief order. The trial court believed the November 22 order had the force and effect of law. The trial court found, therefore, that it could only be modified by strictly following the procedures established by the November 22 order. More specifically, the court determined that to terminate or rescind the November 22 order, the DOE had to:

(a) promulgate new Subpart K, (b) notify [MGPC] of its intent to terminate such relief, (c) afford plaintiff [MGPC] of an opportunity to comment on such intent, and (d) to issue a subsequent written order rescinding such relief.

581 F.Supp. at 1064.

It is not disputed that the OEA did not specifically comply with (b), (c), and (d) above.

■ The error in the trial court's analysis lies in the trial court's confusion as to the difference between administrative agency regulations and administrative agency orders. Administrative agency regulations do have the force and effect of law. See *United States v. Nixon,* 418 U.S. 683, 695, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974); *United States v. Shaughnessy,* 347 U.S. 260, 265, 74 S.Ct. 499, 502, 98 L.Ed. 681 (1954). Administrative agency orders do not, however, have the force and effect of law unless they have been "unequivocally affirmed by a court of law." *Taunton Municipal Lighting Plant v. DOE,* 669 F.2d 710, 715 (TECA, 1982). See also *Placid Oil Company v. Federal Power Commission,* 483 F.2d 880, 904 (5th Cir.1973), aff'd. 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974). Because the November 22, 1974 order had not been affirmed by a court of law prior to the time the DOE attempted to terminate or rescind the November 22, 1974 order, the OEA was free to modify it. It is true that the November 22, 1974 order did specify a means by which the order could be terminated. In the present case, however, we can find no prejudice to MGPC as a result of the OEA's failure to specifically comply with the specified means by which the order could be terminated.

■ We can find no prejudice to MGPC because the procedural protections established in the November order (i.e. advance notice, an opportunity to comment, and a subsequent written order) were effectively preserved in that the DOE, when terminating the exception relief on March 6, 1975, allowed MGPC ten days in which to object to the termination. Further, MGPC

was later informed via the May 15, 1975 order that the March 6, 1975 order had become final.[2] As a result MGPC had notice of the termination and had the benefit of a subsequent writing indicating MGPC's objections were not persuasive. We therefore hold that the trial court erred in holding that the November 22, 1974 exception relief order was not terminated by the March 6, 1975 supplemental order. We find, as a matter of law, that the March 6, 1975 order terminated the November 22, 1974 exception relief order which order granted to MGPC 1.5 cents of exception relief.

B. The March 6, 1975 and May 15, 1975 orders rescinded the November 22, 1974 exception relief order and voided it ab initio.

Our holding that the March 6, 1974 supplemental order terminated MGPC's entitlement to 1.5 cents of exception relief does not end the inquiry. A question exists whether the exception relief was not simply terminated, but was rescinded in total and thereby terminated MGPC's right to use the 1.5 cents of exception relief retroactively and prospectively from November 22, 1974.

The March 6, 1975 order itself is ambiguous as to whether the November 22, 1974 order was terminated or rescinded. The body of the supplemental order states that the November 22, 1974 order "be terminated" (R. 1573); but the end of the order, states:

IT IS THEREFORE ORDERED THAT: (1) The order issued by the Federal Energy Administration to the McCulloch Gas Processing Corporation on November 22, 1974 be and hereby is *rescinded*. (Emphasis added).

The ambiguity described above is enhanced by the May 15, 1975 order which,

when referring to the termination of the November 22, 1974 exception relief order, states:

The material which MGPC submitted was not found to be persuasive and as a result the March 6, 1975 order became final and on March 20, 1975 the 1.5 cents per gallon price exception relief previously extended to MGPC was *terminated*. (R. 1940).

▆▆▆▆ In resolving the ambiguity caused by the March 6, 1975 and May 15, 1975 orders we are guided by several principles governing the interpretation of administrative orders. First, agency orders are to be interpreted in the entire context in which they arise. *Condor Operating Company v. Sawhill*, 514 F.2d 351, 361–62 (TECA 1975), *cert. denied* 421 U.S. 976, 95 S.Ct. 1975, 44 L.Ed.2d 467 (1975). Second, Courts owe great deference to the agency's interpretation of its own orders. *Mountain Fuel Supply Co. v. Department of Energy*, 656 F.2d 690, 694–95 (TECA 1981) (*Fuel Supply Co.* deals with an agency's interpretation of its own regulations. We can see no reason why the rule of deference should not apply to agency orders as well). This court "need not find that the agency's construction is the only possible one, or even the one that the court would have adopted in the first instance." *Belco Petroleum Corporation v. Federal Energy Regulatory Commission*, 589 F.2d 680, 685 (D.C.Cir.1978), citing *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). Finally, administrative orders are not to be given strained and unnatural construction. *Barron Coop. Creamery v. Wickard*, 140 F.2d 485, 488 (7th Cir.1944) (Cited in *Belco*, 589 F.2d 680 at 689 n. 5).

---

**2.** It should be noted that, strictly speaking, that the March 6, 1975 Supplemental Order was issued as a supplement to the November 22, 1974 order and, therefore both orders carried the same case number, FEA–0248. The FEA issued the May 15, 1975 order under the docket number FEA–1393 which was the docket number assigned to MGPC's January 16, 1975 request for

exception relief from Subpart K. Although the May 15, 1975 order did not include docket number FEA–0248, it is clear that the May 15, 1975 order refers to the case number FEA–0248. We do not believe, therefore, that the absence of the docket number FEA–0248 from the May 15, 1975 order is of any consequence.

Guided by the principles stated above we approach the facts of this case. First, we must examine the context in which the March 6 and May 15, 1975 orders were issued. The DOE issued the March 6 and May 15, 1975 orders after two unsuccessful attempts to convince MGPC that the 1.5 cents of exception relief granted to MGPC in November of 1974 could not be used in connection with the new Subpart K regulations. The DOE attempts to convince MGPC that MGPC was not entitled to apply the exception relief in connection with Subpart K were: first, the January 15, 1975 letter from Frank Zarb, then Administrator of the FEA, to MGPC that the 1.5 cents of exception relief was no longer relevant in light of the promulgation of the Subpart K regulations (R. 3055); second, the February 19, 1975 OEA response to MGPC's request for relief from the Subpart K regulation in which the OEA implicitly informed MGPC that MGPC was not entitled to use the 1.5 cents of exception relief in connection with Subpart K. (R. 1764).

The fact that FEA had tried to inform MGPC, prior to the issuance of the March 6, 1975 order, that the FEA did not consider MGPC to be entitled to use the 1.5 cents of exception relief indicates that the DOE wanted to rescind the November 22, 1974 order rather than simply terminate it. After making at least two attempts to convince MGPC that MGPC was not entitled to use the 1.5 cents of exception relief in conjunction with Subpart K, a rescission of the November 22, 1974 order is the more likely intent of the DOE because a rescission would have the desired effect of eliminating any claim of right MGPC had to use the November 22, 1974 exception relief.

In addition to the surrounding circumstances, which indicate a rescission was intended, we have DOE's proffered interpretation of the March 6, 1975 order. While an agency's interpretation of its own order is not conclusive it is entitled to great weight. The DOE's proffered interpretation (that the March 6, 1975 supplemental order rescinded the November 22, 1974 order) of the March 6, and May 15, 1975 orders is, therefore, entitled to great deference. Granting deference to the DOE's interpretation does not result in a strained or unnatural construction.

We realize by holding that the November 22, 1974 order was rendered a complete nullity we hold that MGPC could not apply the 1.5 cents of exception relief retroactively for all of 1974. Denying MGPC the use of the exception relief for any part of 1974 may appear harsh in light of MGPC's projected $764,000 in 1974. It should be acknowledged, however, as the OEA acknowledged in the May 15, 1975 order, that MGPC did not suffer a loss a $764,000 in 1974.

It should also be noted that there are substantial additional and serious discrepancies between MGPC's projections of its financial and operating posture during 1974 as set forth in the firm's submissions to the FEA on October 29, 1974, and the data which reflects its actual operations as submitted to the FEA on April 21, 1975. In its October 29 projection MGPC underestimated its 1974 processing volume by approximately 15.3 million gallons, or 21 percent of the firm's estimated annual production. MGPC's estimate of its 1974 operating income was also $900,000 less than its actual results, an amount which represents approximately 10 percent of the firm's estimated total revenue for 1974. In view of MGPC's size, sales revenues, and the fact that the projections at issue were prepared during the tenth month of the fiscal year in question, the degree of error in those projections was very substantial. In the absence of any showing that MGPC has improved its projection techniques, the magnitude of the prior errors undermines the reliability of similar projections as to its 1975 fiscal year which MGPC has provided in support of its present exception application.

(R. 1943).

MGPC's lack of unique harm in 1974 supports the DOE's view that the March 6, and

May 15, 1974 orders rescinded the November 22, 1974 order in toto.

An additional point of interest is that on August 29, 1975, the FEA issued a "Class Exception" which allowed gas processors to apply minimum base prices and non-product pass-through provisions of Subpart K retroactively to August 19, 1973. The Class Exception did not permit rebilling for the period August 19, 1973 to December 31, 1974, but allowed the processors to bank the price increases and to recover up to 10% of such banked costs per month in determining the maximum lawful selling price prospectively to sales of NGLP's after August 29, 1975. 40 F.R. 40,824 (September 4, 1975). The existence of the "Class Exception" described above does not lend additional support to our holding that the OEA intended to rescind the November 22, 1974 exception relief. The existence of the "Class Exception" does not lend additional support to our holding because the "Class Exception" was issued after the OEA rescinded the November 22, 1974 exception relief order. As a result, the OEA could not have had the "Class Exception" in mind when it made the decision whether to rescind or merely terminate the November 22, 1974 order. Nevertheless, the existence of the additional relief afforded to MGPC as a result of the "Class Exception" would appear to have eliminated any possible hardship MGPC might have suffered during 1974.

For the reasons stated above, we therefore hold that the November 22, 1974 exception relief order was rescinded in toto and thereby denied MGPC use of the exception relief retroactively or prospectively from November 22, 1974.

Our holding that the DOE effectively rescinded the exception relief awarded to MGPC on November 22, 1974 completely resolves the present dispute. We feel compelled, however, to briefly comment upon other issues raised by the parties.

   C.  The November 22, 1974 exception relief could only be used in connection with the Subpart E.

One such other issue is the DOE's position that the November 22, 1974 exception relief could be used by MGPC only in conjunction with the Subpart E regulations and not in conjunction with the Subpart K regulations. The DOE finds support for the proposition that the DOE intended the November 22, 1974 order to apply only in conjunction with the Subpart E regulation in the November 22, 1974 order:

In order to alleviate the serious hardship found to exist the FEA has determined that interim exception relief should be provided at this time pursuant to which MGPC would be permitted *to adjust its May 15, 1973 selling prices for the purposes of Section 212.82* so that if the resulting price increases were apportioned over the course of 1974 MGPC would not have experienced the $764,000 operating loss which it projects it will incur during the 1974 fiscal year. (Emphasis added).

As emphasized in the above excerpt, the November 22, 1974 exception relief order allowed MGPC to adjust its prices for the purposes of 10 C.F.R. § 212.82. 10 C.F.R. § 212.82 is a part of Subpart E. Subpart K, which was later promulgated, is not under Section 212.82. Rather, Subpart K is codified as 10 C.F.R. § 212.161–171.

Were we to feel the need to rule upon the trial court's determination that MGPC could apply the 1.5 cents of exception relief in conjunction with Subpart K we would have to reverse in light of the language of the November 22, 1974 order quoted above. Such a holding would be supported by the DOE's contemporaneous construction of the November 22, 1974 order found in two letters. One such letter is the letter, mentioned above, from Frank Zarb to MGPC in which Zarb stated that in view of the new regulation, "the interim exception relief was no longer relevant". (R. 3055). The other letter is from Richard Tedrow, Deputy Director of the OEA, dated January 13, 1975 in which Tedrow informed MGPC that since the new regulations had been issued, no further consideration of the interim relief was necessary and that the November

22, 1974 order was considered final (R. 1678). We believe these two letters support the DOE's position that the November 22, 1974 order could only be applied in connection with Subpart E.

  D.  Did the trial court err in ruling, as a matter of law, that the exception relief awarded to MGPC could be awarded retroactively from November 22, 1974 back to January 1, 1974.

Were it not for our holding that the March 6, 1974 exception relief order was completely rescinded we would have difficulty resolving this issue. The relevant language of the November 22, 1974 order provides:

> In order to alleviate the serious hardship found to exist the FEA has determined that interim exception relief should be provided at this time pursuant to which MGPC would be permitted to adjust its May 15, 1973 selling prices for the purpose of Section 212.82 *so that if the resultant price increases were apportioned over the course of 1974*, MGPC would not have experienced the $764,000 operating loss which it projects it will incur during the 1974 fiscal year. (Emphasis added).

(R. 1572).

The emphasized language appears to the court to be ambiguous as to retroactivity. The trial court relied upon an affidavit of an MGPC attorney in resolving the ambiguity. MGPC's attorney's affidavit stated he had talked with someone at the OEA who told him that MGPC could apply the exception relief anyway MGPC wished. 581 F.Supp. at 1053. We doubt it was proper for the trial court to rely on the above mentioned affidavit to the exclusion of the Tedrow and Zarb letters in ruling on a motion for summary judgment. Even though the DOE did not file opposing affidavits we do believe the matter involved a factual dispute incapable of resolution on summary judgment. Again, in light of our holdings in this case, we do not need to reach this issue.

Another issue we need not reach is whether or not the trial court erred in

holding that the DOE is estopped from claiming that the interim relief was not retroactive (*MGPC, Inc.*, 581 F.Supp. at 1062) and that the relief could not be used in conjunction with Subpart K (*Id.* at 1063–1064). Although we do not need to reach the trial court's holding in regard to estoppel, it should be noted that this court doubts any basis exists in the present case for holding the government estopped.

## CONCLUSION

For the reasons stated above we reverse the trial court in full. Because the Department of Energy did not formally move for summary judgment below we would ordinarily remand to the trial court. In the present case, however, we feel it would be just, under the circumstances, to direct the trial court to enter summary judgment for the government.

The source of this court's power to direct the trial court to enter summary judgment for a nonmoving party stems from our jurisdictional statute:

> ... except as provided in Subsection (d)(2) of this section, the court shall not have the power to issue any interlocutory decree staying or restraining in whole or in part any provisions of this title, or the effectiveness of any regulation or order issued thereunder. In all other respects, the court shall have the powers of a circuit court of appeals with respect to the jurisdiction conferred on it by this title.

Economic Stabilization Act of 1970 § 211(b)(1), 12 U.S.C. § 1904 note.

> Section 2106 of Title 28, U.S.C. provides:
>
> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

434

■ The power granted by 28 U.S.C. § 2106 to appellate courts to dispose of a case on appeal is broad. While it is seldom appropriate for an appellate court to direct the entry of summary judgment, since such a determination is best left to the trial court, courts have held that 28 U.S.C. § 2106 does give the appellate court the power to do so when it would be just under the circumstances. See *Morgan Guaranty Trust Company of New York v. Martin,* 466 F.2d 593, 600 (7th Cir.1972). The Ninth Circuit, for example, has held:

> Under proper circumstances an appellate court may enter summary judgment for the nonmoving party. *E.C. Ernst, Inc. v. General Motors Corporation,* 537 F.2d 105 (5th Cir.1976); *Morgan Guaranty Trust Co. v. Martin,* 466 F.2d 593 (7th Cir.1972); *Abrams v. Occidental Petroleum Corp.,* 450 F.2d 157 (2d Cir. 1971) aff. sub nom *Kern County Land Co. v. Occidental Petroleum Corporation,* 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973).

*Martinez v. United States of America,* 669 F.2d 568, 570 (9th Cir.1982).

■ Under the present circumstances justice requires that this court direct to the trial court to enter summary judgment on behalf of the nonmoving party because no facts are disputed concerning the March 6, and May 15, 1975 orders (which orders form the basis of our decision). Additionally, the parties have had a full and fair opportunity to brief and argue the interpretation and effect of these two orders. We therefore reverse the trial court in full and remand to the trial court with the direction that the trial court enter summary judgment for the defendant, DOE.